IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED

SEP 1 4 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

CVENT, INC.,                          )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )
                                      )   1:10-cv-00481 (LMB/IDD)
EVENTBRITE, INC., <u>et al</u>.,     )
                                      )
        Defendants.                   )
                                      )

## MEMORANDUM OPINION

Before the Court is defendant Eventbrite's motion to dismiss
several of the counts in the plaintiff's first amended complaint
for failure to state a claim.  For the reasons stated in open
court and in this opinion, the defendant's motion will be granted
in part and denied in part.

## I. Background

This case arises out of the alleged intellectual property
theft of data from plaintiff Cvent's website by Eventbrite and an
individual by the name of Stephan Foley, using a method known as
"scraping."  Cvent, Inc. is a Delaware software company with its
principal place of business in McLean, Virginia, which licenses
web-hosted software for use by companies and their meeting
planners.  Cvent is the owner and operator of a website at
www.cvent.com, which, among other things, assists customers in

locating venues for and organizing large-scale events. As part of that business, Cvent has created a web-based database of meeting venues around the world, called the Cvent Supplier Network, which includes detailed information about each venue, such as the availability and capacity of meeting rooms and venue amenities and services. Cvent has also undertaken development of a "Destination Guide," an informational resource of city-specific profiles designed for meeting and event planners. The complaint alleges that Cvent has invested substantial sums of money into developing its website, including the Cvent Supplier Network and the Destination Guide pages, and that it has obtained and registered copyrights for its website, which are displayed on its website pages. Cvent currently holds three copyright registrations for its website content that are relevant to this case, each of which was filed in late April 2010.

Defendant Eventbrite, Inc. is a Delaware corporation with its principal place of business in San Francisco, California, which maintains an online event planning, sales, and registration service hosted on its website, www.eventbrite.com. Cvent alleges that in September and October 2008, Eventbrite set out to create a set of pages (a "Venue Directory") on its website containing a collection of publicly available information about hotels, restaurants, bars, and meeting venues in various cities. Most of the information in Eventbrite's Venue Directory is publicly

2

available from the website of each hotel and restaurant. Cvent alleges that rather than aggregating that information itself, Eventbrite hired Stephan Foley, a computer engineer, to "scrape" (i.e. copy) the information directly from Cvent's website. Cvent further alleges that Eventbrite then reformatted the material into its own layouts and made it available on the Eventbrite website. Eventbrite compensated Foley in November 2008 for his work in scraping the venue information from the Cvent website.

On May 10, 2010, Cvent filed a complaint against Eventbrite and unknown Does 1-10. On July 28, 2010, following expedited discovery as to the identities of Does 1-10, Cvent filed a first amended complaint, naming only Eventbrite and Stephan Foley as defendants. The first amended complaint sets out eight claims for relief, on the following grounds:

1. Copyright Infringement, 17 U.S.C. § 101 et seq.

2. Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

3. Violation of the Virginia Computer Crimes Act, Va. Code Ann. § 18.2-152.3 et seq.

4. Lanham Act "reverse passing off," 5 U.S.C. § 1125(a)

5. Breach of Contract (based on the Terms of Use posted on the Cvent website)

6. Unjust Enrichment

7. Business Conspiracy, Va. Code Ann. § 18.2-499 et seq.

8. Common Law Conspiracy

3

Cvent seeks a permanent injunction prohibiting defendants from accessing its website without authorization and enjoining defendants from copying, using, or creating derivative works from any Cvent website content. Plaintiff also requests an order impounding and destroying all infringing copies of Cvent's copyrighted works, along with an order directing Eventbrite to engage in corrective advertising, and also seeks damages, interest, and attorneys fees in an amount exceeding $3,000,000. The requested damages include compensatory damages, lost profits, disgorgement of defendants' profits, statutory damages pursuant to the Copyright Act, treble damages pursuant to the Lanham Act and Va. Code Ann. § 18.2-500, and exemplary damages not in excess of $350,000 because of defendants' willful and malicious conduct.

On August 10, 2010, Eventbrite filed a Motion to Dismiss Claims Two through Eight of plaintiff's first amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), alleging that those claims are either barred, preempted by federal law, or otherwise fail to state a cause of action. Eventbrite further moves to strike Cvent's prayers for attorneys' fees, statutory damages, punitive damages, and treble damages, arguing that those forms of relief are not available pursuant to Cvent's first claim for relief (copyright infringement). In particular, Eventbrite argues that Cvent has not alleged any post-registration copyright infringement in its complaint, and that statutory damages and

attorneys' fees are therefore not appropriate under the Copyright
Act.[1]

## II. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be
dismissed "unless it appears certain that [plaintiff] can prove
no set of facts that would support his claim and would entitle
him to relief." Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir.
1999). The Court must accept all of the complaint's well-pleaded
allegations as true and view them in a light most favorable to
the plaintiff. Smith, 1184 F.3d at 361. However, that
requirement applies only to facts, not to legal conclusions.
Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). A court need not
accept legal conclusions drawn from the facts, nor must it accept
unwarranted inferences or unreasonable conclusions. E. Shore
Markets, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th
Cir. 2000). In addition, "if the well-pled facts do not permit
the court to infer more than the mere possibility of misconduct,
the complaint has alleged- but it has not 'show[n]'- that the
pleader is entitled to relief. Iqbal, 129 S. Ct. at 1950.
"Factual allegations must be enough to raise a right of relief
above the speculative level, on the assumption that all of the

_____

[1] Defendant Foley has not joined in Eventbrite's motion to
dismiss but has been granted an extension of time to file his
answer, which is now due on September 17, 2010.

allegations in the complaint are true." <u>Bell Atl. Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 555 (2007).


## III. Discussion

The gravamen of Cvent's complaint is, at its core, a claim for intellectual property theft and copyright infringement. Accordingly, Eventbrite does not move to dismiss plaintiff's Copyright Act claim (Claim One), nor could it plausibly do so under Fed. R. Civ. P. 12(b)(6). However, plaintiff has also raised seven other claims premised upon state and federal law, both statutory and common law, all of which Eventbrite moves to dismiss.

Eventbrite has moved to dismiss plaintiff's Virginia Computer Crimes Act (Claim Three), Lanham Act (Claim Four), and unjust enrichment (Claim Six) claims on the theory that they are all preempted by the federal Copyright Act. Eventbrite has also moved to dismiss plaintiff's Computer Fraud and Abuse Act (Claim Two), Breach of Contract (Claim Five), Business Conspiracy (Claim Seven), and Common Law (Claim Eight) claims on the grounds that, for various reasons, they each fail to state a legal claim upon which relief can be granted. Finally, Eventbrite moves to strike portions of plaintiff's prayer for relief. This Court will consider each of Eventbrite's motions in turn.

A.  Claim Two: Computer Fraud and Abuse Act, 18 U.S.C.
    § 1030

Eventbrite moves to dismiss the Computer Fraud and Abuse Act
(CFAA) claim on the ground that the CFAA only prohibits hacking
or other unauthorized access to files, while the material that
Eventbrite is alleged to have scraped from Cvent's website is
publicly available, and Eventbrite was thus authorized to access
it.

The CFAA is a civil and criminal anti-hacking statute
designed to prohibit the use of hacking techniques to gain
unauthorized access to electronic data.  By its terms, the
statute forbids "intentionally access[ing] a computer without
authorization or exceed[ing] authorized access, and thereby
obtain[ing] . . . information from any protected computer."  18
U.S.C. § 1030(a)(2).  "Exceed[ing] authorized access" is
explicitly defined as "to access a computer with authorization
and to use such access to obtain or alter information in the
computer that the accessor is not entitled to obtain or alter."
18 U.S.C. § 1030(e)(6).  Eventbrite moves to dismiss this count
on the ground that although Cvent may have pled facts giving rise
to a plausible inference that defendants made an unauthorized *use*
of the material on the Cvent website, the complaint does not
allege sufficient facts to support a claim that defendants
obtained unauthorized *access* to that information.  Rather, the
data which Eventbrite is alleged to have stripped from Cvent's

7

website is publicly available on the Internet, without requiring any login, password, or other individualized grant of access. By definition, therefore, Eventbrite argues it could not have "exceeded" its authority to access that data.

Cvent's only argument in support of its CFAA claim rests upon the Terms of Use on its website, which state in part that "No competitors or future competitors are permitted access to our site or information, and any such access by third parties is unauthorized . . . ." Pl.'s Opp. to Def.'s Mot. to Dismiss First Am. Compl. at 4. Notwithstanding that language, Cvent's website in fact takes no affirmative steps to screen competitors from accessing its information. Cvent's CSN venue location database is not password-protected, nor are users of the website required to manifest assent to the Terms of Use, such as by clicking "I agree" before gaining access to the database. Rather, anyone, including competitors in the field of event planning, may access and search Cvent's venue information at will.

Indeed, the Terms of Use for Cvent's website are not displayed on the website in any way in which a reasonable user could be expected to notice them. Based upon screenshots of the website provided to the Court by defense counsel, and to which plaintiff's counsel did not object, the Terms of Use do not themselves appear in the body of the first page of the Cvent website. The link that accesses the Terms is buried at the bottom of the first page, in extremely fine print, and users must

affirmatively scroll down to the bottom of the page to even see the link. Specifically, when users scroll down to the bottom of Cvent's homepage, they are confronted with a black band with twenty-eight different links separated into four columns and grouped under four headings: "Event Planning," "Online Surveys," "Site Selection,"and "Company Info." Under the "Company Info" heading, the rightmost heading on the page, the "Terms of Use" link appears two lines down in small white font, sandwiched between "Privacy Policy" and "Contact Us." Moreover, even when users click on "Terms of Use," they are directed to a secondary page entitled "Terms of Use for Cvent Products," which itself has three separate links to three different Terms of Use: "Supplier Network Terms of Use," "Event Management Terms of Use," and "Web Survey Terms of Use." Website users can access the various Terms of Use documents only by clicking on the appropriate links, thereby opening the documents on a new page. The documents themselves are each several pages long.

Cvent's website, including its CSN database, is therefore not protected in any meaningful fashion by its Terms of Use or otherwise. Eventbrite thus properly cites to State Analysis, Inc. v. American Financial Services, Assoc., 621 F. Supp. 2d 309 (E.D.Va. 2009) (Brinkema, J.), in which this Court rejected a CFAA claim against a defendant who, like Eventbrite, was accused of using material to which it had lawful access in ways that violated the agreement governing that access. In State Analysis,

the plaintiff sued two defendants: the first was alleged to have accessed the plaintiff's website using usernames and passwords that did not belong to it and to which it had never been given lawful access, while the second was alleged to have misused the passwords with which it had been entrusted. This Court allowed the CFAA claim to proceed against the first defendant, but granted the second defendant's motion to dismiss, explicitly holding that while use of an unauthorized password to access password-protected content may constitute a CFAA violation, a mere allegation that a defendant "used the information [which it had been given lawful authority to access] in an inappropriate way" did not state a claim for relief. Id. at 317.

The overwhelming weight of authority supports this view of the CFAA. See, e.g., LVRC Holdings LLC v. Brekka, 581 F.3d 1127 (9th Cir. 2009); Orbit One Commc'ns, Inc. v. Numerex Corp., 692 F. Supp. 2d 373, 383 (S.D.N.Y. 2010); Lewis Burke Assocs. LLC v. Widder, No. 09-cv-00302-JMF, 2010 WL 2926161 at *5-*6 (D.D. C. July 28, 2010). Meanwhile, the cases cited by Cvent in its opposition to Eventbrite's motion to dismiss nearly all present factual situations that are distinguishable from the facts in the instant case. For example, America Online v. LCGM, Inc., 46 F. Supp. 2d 444 (E.D.Va. 1998) (Lee, J.), the only case cited by plaintiff from this district, upheld a CFAA claim for electronic datastripping. However, the defendants in that case were alleged to have obtained AOL e-mail accounts in order to use extractor

software programs to harvest the e-mail addresses of AOL members and then send bulk spam solicitations to them. _Id._ at 448. Not only was such conduct in violation of AOL's Terms of Use, but the defendants were plainly never given authorized access to the confidential e-mail addresses of other users. The AOL case thus stands in contradistinction to this case, where the entire world was given unimpeded access to Cvent's website, its CSN venue database, and its "Destination Guide." For those reasons, Eventbrite's motion to dismiss plaintiff's CFAA claim will be granted.

      B.   Claim Three: Virginia Computer Crimes Act, Va. Code Ann. § 18.2-152.3 _et seq._

Eventbrite moves to dismiss plaintiff's claim for violation of the Virginia Computer Crimes Act (VCCA), arguing that it is preempted by the federal Copyright Act. Section 301(a) of the Copyright Act states:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [of the Copyright Act] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title.

17 U.S.C. § 301(a). A state law claim is preempted by the Copyright Act if (1) the work at issue is "within the scope of the 'subject matter of copyright' as specified in 17 U.S.C.A. §§ 102, 103 and (2) the rights granted under state law are

11

equivalent to any exclusive rights within the scope of federal copyright [law] as set out in 17 U.S.C.A. § 106." <u>Rosciszewski v. Arete Assocs., Inc.</u>, 1 F.3d 225, 228 (4th Cir. 1993). A right under state law is "equivalent" to a right under federal copyright law if that right "may be abridged by an act which, in and of itself, would infringe one of the exclusive rights [granted in the Copyright Act]." <u>Id.</u>

In support of its motion to dismiss, Eventbrite relies upon the Fourth Circuit's decision in <u>Rosciszewski</u>, which held that where a claim under the Virginia Computer Crimes Act does not require proof of elements beyond those necessary to prove copyright infringement, that claim is preempted by federal copyright law. The elements of a violation of the VCCA are that the defendant (1) uses a computer or computer network; (2) without authority; and (3) either obtains property or services by false pretenses, embezzles or commits larceny, or converts the property of another. Va. Code § 18.2-152.3. In comparing those elements to the scope of the federal Copyright Act under 17 U.S.C.A. § 106, the Fourth Circuit in <u>Rosciszewski</u> determined that "the protection of computer programs from unauthorized copying granted under [the VCCA] is equivalent to the exclusive right of the copyright owner to reproduce a copyrighted work under the Copyright Act. Therefore, [a VCCA cause of action] is preempted to the extent that it is based on

reproduction of the copyrighted computer program." Id. at 230.

In light of the Fourth Circuit's holding, the only basis for finding that the VCCA claim is not preempted would be if the VCCA violations alleged here are distinguishable in some way from the software copying alleged in Rosciszewski. Cvent argues that this case is distinguishable from Rosciszewski because the VCCA has been amended since the Rosciszewski decision. The earlier version of the VCCA differed from the current version of the statute in one primary respect: the earlier version simply required proof that the defendant used a computer or computer network without authority and with the *intent* to obtain property or services by false pretenses, to embezzle or commit larceny, or to convert the property of another. See id. By contrast, the statute as amended in 2005 now requires that the defendant must *actually commit* larceny, false pretenses, embezzlement, or conversion to be liable. See Va. Code Ann. § 18.2-152.3 et seq. Cvent thus attempts to distinguish Rosciszewski, arguing that the current version of the statute presents a distinct claim for relief that is qualitatively different from a claim for alleged copyright infringement.

In its reply, however, Eventbrite properly relies upon State Analysis, cited on page 9 of this Memorandum Opinion, in which this Court found a VCCA claim even under the current amended statute preempted by the Copyright Act. The plaintiff in State Analysis similarly argued that its VCCA claim was based on

13

elements beyond mere copying, including the elements of false pretenses, embezzlement, and/or conversion, and that the claim was therefore not preempted by federal copyright law. Id. at 320. Yet the complaint consistently alleged facts relating to the plaintiff's copyright ownership and the defendant's alleged infringement. Accordingly, this Court found that "[o]n the facts as pled by StateScape, it is difficult to see how any claim under the VCCA would contain any elements making it qualitatively different from the Copyright Act claims," and dismissed the claim as preempted. Id.

This case is functionally indistinguishable from State Analysis. Cvent's first amended complaint alleges facts almost exclusively relating to Cvent's ownership of copyrights for its website and Eventbrite's alleged infringement of those copyrights by means of unlawful "scraping" techniques. At no point does the complaint plead specific facts giving rise to a plausible inference of larceny, false pretenses, embezzlement, or conversion, as required by the plain text of the VCCA. In fact, Cvent's claim in this case reduces to nothing more than a copyright infringement allegation, dressed up in VCCA garb. As such, the VCCA claim is preempted by the Copyright Act and will be dismissed.

C. Claim Four: Lanham Act, 5 U.S.C. § 1125(a)

Eventbrite next moves to dismiss the Lanham Act claim for "reverse passing off" on the ground that it is barred by Dastar

14

<u>v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23 (2003). In <u>Dastar</u>, the Supreme Court held that although the Lanham Act forbids a reverse passing off of works created by another, that rule regarding the misuse of trademarks is trumped by copyright law, such that if a copyrighted work passes into the public domain, a Lanham Act claim will no longer lie. The <u>Dastar</u> Court also limited the scope of the Lanham Act to "tangible goods offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." <u>Id.</u> at 32. The rationale for doing so was that otherwise, a Lanham Act reverse passing off claim would be functionally indistinguishable from a copyright infringement claim.

Following <u>Dastar</u>, many courts have rejected claims of "reverse passing off" based on copying the intellectual property of another and passing it off as one's own. For example, in <u>Smartix International Corp. v. MasterCard International, LLC</u>, No. 06-cv-05174-GBD, 2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008), the court rejected Lanham Act claims based on the allegation that the defendant stole confidential and proprietary materials from the plaintiff's computer server. Similarly, in <u>General Universal Systems, Inc. v. Lee</u>, 379 F.3d 131, 148-49 (5th Cir. 2004), the court held that a defendant's copying a freight tracking software program and marketing it as its own did not give rise to a Lanham Act claim. <u>See also</u> <u>Bob Creeden & Assocs., Ltd. v. Infosoft, Inc.</u>, 326 F. Supp. 2d 876, 879 (N.D. Ill. 2004); <u>Larkin Group, Inc. v. Aquatic Design Consultants, Inc.</u>, 323 F. Supp. 2d 1121

15

(D. Kan. 2004); <u>McArdle v. Mattel Inc.</u>, 456 F. Supp. 2d 769, 783-84 (M.D. Tenn. 2006). However, other courts have reached the opposite conclusion, allowing Lanham Act claims to proceed under similar factual circumstances. <u>See, e.g.</u>, <u>Cable v. Agence France Presse</u>, No. 09 C 8031, 2010 WL 290274, at *4-*5 (N.D. Ill. July 20, 2010) (rejecting <u>Dastar</u> challenge in a case involving electronic data stripping); <u>Experian Mktg. Solutions, Inc. v. U.S. Data Corp.</u>, No. 8:09 CV 24, 2009 WL 2902957, at *9-*10 (D. Neb. Sept. 8, 2009) (sustaining reverse passing off claim for redistribution of proprietary databases, noting that plaintiff did not allege "copying the ideas embodied in the databases" but "rather they allege[d] improper use of the actual files").

There is no controlling precedent in the Fourth Circuit on point, nor has this Court ever confronted this precise issue. However, Cvent appears to have the better of the argument, at least insofar as its complaint does not assert that Eventbrite has passed off its *ideas* as its own, but rather that Eventbrite has re-branded and re-packaged its *product* (the CSN venue database) and sold it as its own. <u>See</u> First Am. Compl. ¶ 82-84. Admittedly, the Supreme Court's "tangible goods" language in the <u>Dastar</u> opinion is confusing, and tends to suggest that electronic products are not covered by the Lanham Act. However, the <u>Dastar</u> opinion also makes clear that the Court used that language simply to distinguish goods and products offered for sale (which receive Lanham Act protection) from any "idea, concept, or communication embodied in those goods" (which are protected only by copyright

laws).  <u>Dastar</u>, 539 U.S. at 37.

Thus, to the extent that Cvent is pleading its Lanham Act claim as an alternative to its copyright claim, it should be permitted to proceed.  <u>See</u> J. Thomas McCarthy,<u> McCarthy on Trademarks and Unfair Competition </u>§ 27:77.1 (2006) ("In many cases a Lanham Act false designation claim accompanies a copyright infringement claim in the complaint because it is unclear if the copyright is valid, is owned by this plaintiff, or is infringed.  The Lanham Act claim is included as a back up in case the copyright claim fails.").  Accordingly, Cvent's motion to dismiss the Lanham Act claim will be denied.


D. Claim Five: Breach of Contract

Eventbrite next moves to dismiss plaintiff's breach of contract claim for failure to state a plausible entitlement to relief.  Eventbrite sets forth three arguments in support of that motion: (1) any contract claim against Eventbrite is preempted by federal copyright law; (2) Eventbrite is not a party to any contract; and (3) no contract exists.

The first two arguments are unavailing.  A breach of contract claim premised upon the Terms of Use on Cvent's website is qualitatively different from a claim for copyright infringement under the Copyright Act and therefore is not preempted.  Moreover, as explained below with respect to plaintiff's conspiracy claims, Cvent has explicitly pled that

defendant Foley was an agent of defendant Eventbrite, which hired Foley as an independent contractor to perform the alleged "website scraping" conduct at issue here. Thus, to the extent that any contract exists, Foley's assent to that contract would bind Eventbrite, the principal.

However, Cvent's breach of contract claim fails to state an entitlement to legal relief because Cvent has not alleged sufficient facts to support a plausible allegation that a contract existed between Cvent and Eventbrite. Plaintiff's complaint fails to allege any written or oral contract between the parties. Instead, Cvent relies exclusively on its "Terms of Use," which are displayed on secondary pages of its website and can be accessed only through one of several dozen small links at the bottom of the first page. As noted above in this Court's analysis with respect to plaintiff's Computer Fraud and Abuse Act claim, on pages 8-9 of this Memorandum Opinion, the "Terms of Use" link only appears on Cvent's website via a link buried at the bottom of the first page. Moreover, users of Cvent's website are not required to click on that link, nor are they required to read or assent to the Terms of Use in order to use the website or access any of its content.[2] This case is therefore not a "clickwrap" case, but rather falls into a category of alleged contracts that many courts have termed "browsewrap agreements."

_____

[2] Eventbrite has provided the Court with screenshots of the Cvent website, showing the location of the cvent.com Terms of Use, and has requested that the court take judicial notice of those printouts. See Def.'s Req. for Judicial Notice.

See, e.g., Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009); Doe v. Sexsearch.com, 502 F. Supp. 2d 719, 729 n.1 (N.D. Ohio 2007).

Neither party in this case has cited case law from either the Fourth Circuit or this Court explicitly addressing the validity of this type of browsewrap contract. Most courts which have considered the issue, however, have held that in order to state a plausible claim for relief based upon a browsewrap agreement, the website user must have had actual or constructive knowledge of the site's terms and conditions, and have manifested assent to them. See, e.g., Sw. Airlines Co. v. Boardfirst, LLC, No. 3:06-CV-0891-B, WL 4823761 at *5 (N.D. Tex. Sept. 12, 2007); Ticketmaster Corp. v. Tickets.com, Inc., No. CV99-7654, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003). In this case, plaintiff has not pled sufficient facts to plausibly establish that defendants Eventbrite and Foley were on actual or constructive notice of the terms and conditions posted on Cvent's website. Plaintiff alleges that "the terms of the TOUs [Terms of Use] are readily available for review," but has not provided any further factual detail to support that allegation. Pl.'s First Am. Compl. at 5. Under the Supreme Court's recent pleading precedents, such conclusory allegations are insufficient to "nudge [the plaintiff's claims] across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Plaintiff nonetheless advances the additional argument that

its complaint states a breach of contract claim under the Uniform Computer Information Transactions Act (UCITA), as adopted by Virginia law. UCITA provides a breach of contract claim for violation of electronic Terms of Use, if a person (1) has an "opportunity to review" the terms and (2) engages in statements or conduct indicating, or leading one to infer, the person's "assent" to the terms. Va. Code § 59.1-501.11 & 59.1-501.12. Individuals, however, are only deemed to have had an "opportunity to review" a term if the term is "available in a manner that ought to call it to the attention of a reasonable person," Va. Code Ann. § 59.1-501.13:1, or if the website "disclose[s] the availability of the standard terms in a prominent place on the site" and "does not take affirmative acts to prevent printing or storage of the standard terms for archival or review purposes." Va. Code § 59.1-501.14:1.

In its complaint, plaintiff makes bare assertions that its Terms of Use were prominently displayed on its website, that defendants had an "opportunity to review" the Terms of Use pursuant to Va. Code Ann. § 59.1-501.13:1 and Va. Code Ann. § 59.1-501.14:1, and that defendants manifested assent to those terms merely by accessing Cvent's venue location database. However, those conclusory allegations are flatly contradicted by the screenshots of Cvent's website and are plainly insufficient under the Iqbal and Twombly standard to state a plausible claim for relief. The essence of a breach of contract claim is a meeting of the minds and a manifestation of mutual assent. See

Restatement (Second) of Contracts § 17 cmt. c (1981). Plaintiff has simply failed to "plead[] sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct" with respect to its breach of contract claim. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). Accordingly, Count Five of plaintiff's First Amended Complaint will be dismissed.

E.   Claim Six:   Unjust Enrichment

Eventbrite also argues that this Court should dismiss plaintiff's unjust enrichment claim on the ground that it is preempted by the Copyright Act. Citing Microstrategy, Inc. v. Netsolve, Inc., 368 F. Supp. 2d 533 (E.D. Va. 2005) (Lee, J.), Eventbrite contends that state law unjust enrichment claims are preempted to the extent that they are based entirely on an allegation of copying protected works. Specifically, Eventbrite alleges that "Cvent's purported claim is based entirely on its allegation that Eventbrite copied material from Cvent's website and sold it as its own. As that allegation contains no elements other than bare  copying and distribution, it is preempted." Def.'s Mot. to Dismiss Pl.'s First Am. Compl. at 7.

Eventbrite's argument is certainly correct in the mine run of cases. See 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1](g) (2003) ("[A] state law cause of action for unjust enrichment [is] pre-empted insofar as it applies to

21

copyright subject matter."). However, as noted above with respect to the Lanham Act claim, to the extent that Cvent is alleging unjust enrichment based upon Eventbrite's derivation of commercial benefit from its unauthorized scraping and repackaging of Cvent's *products* (including the CSN database), that states a claim for relief that is separate and distinct from a claim for copyright infringement based upon the alleged theft of Cvent's copyrightable *ideas*. <u>See</u> Pl.'s First Am. Compl. ¶ 103 ("Defendants have accepted and retained the benefits of their unauthorized scraping, copying, and sale of valuable Cvent property *and products* in circumstances which render it inequitable for them to retain those benefits at Cvent's expense without payment to Cvent.") (emphasis added). As this Court noted in <u>Microstrategy</u>, a plaintiff's unjust enrichment claim "may survive a preemption challenge if plaintiffs can demonstrate that defendants were unjustly enriched by 'material beyond copyright protection.'" 368 F. Supp. 2d at 537. Accordingly, Eventbrite's argument is premature at this time, and its motion to dismiss plaintiff's unjust enrichment claim will be denied.

    F.   Claims Seven and Eight: Business and Common Law Conspiracy

Eventbrite moves to dismiss plaintiff's state-law conspiracy claims on the ground that, simply put, one cannot conspire with oneself. Cvent alleges a conspiracy between only two actors: Eventbrite and Stephan Foley. Specifically, Cvent alleges that

Eventbrite hired and paid Foley to scrape data from Cvent's website for use on Eventbrite's website. Courts have repeatedly held that "[a]cts of corporate agents are acts of the corporation itself." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 1997) (citing Bowman v. State Bank of Keysville, 331 S.E. 2d 797, 801 (Va. 1985)). Virginia courts have also specifically adopted the intracorporate immunity doctrine for Virginia conspiracy laws. See Fox v. Deese, 362 S.E. 2d 699, 708 (Va. 1987). As a result, it is black letter law that a claim that a corporation has conspired with its own agent fails as a matter of law.[3]

To avoid this line of reasoning, plaintiff repeatedly argues that Foley was merely an "outside contractor" of Eventbrite, not an employee, and that Foley did not take on any fiduciary duties or other obligations of loyalty or obedience toward Eventbrite. That argument is irrelevant under Virginia law, because the existence of an agency relationship for intracorporate immunity purposes hinges upon the substance, not the form, of the relationship between the corporation and the individual. See Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 223-24 (4th Cir. 2004). If a corporation delegates a task to an individual (including an independent contractor) to serve corporate purposes, the individual acts with the same general objective as the corporation, and the corporation retains

_____

[3] The only exception is when the agent has an independent personal stake in the corporation's illegal objectives. See ePlus, 313 F.3d at 179. However, plaintiff has not alleged such an independent personal stake on defendant Foley's part.

23

ultimate decisionmaking authority, then the individual and the corporation are for all intents and purposes the same entity. Under such circumstances, the individual and the corporation logically cannot conspire with one another. See <u>Oksanen</u> <u>Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 945 F.2d 696, 703 (4th Cir. 1991) (finding that a hospital lacked the legal capacity to conspire with members of an independent peer review committee who were acting on its behalf).

In this case, plaintiff alleges that Eventbrite hired Foley to mine data from Cvent's website for Eventbrite's commercial gain. The "scraped" data was used solely for Eventbrite's benefit, and indeed it is difficult to imagine any independent interest that defendant Foley might have had in acquiring it. Because the allegations in its complaint cannot plausibly allege a business conspiracy or a common law conspiracy between defendants Eventbrite and Foley, Eventbrite's motion to dismiss both of plaintiff's conspiracy claims will be granted.

G.  Motion to Strike Plaintiff's Requested Relief

Finally, Eventbrite argues that certain of Cvent's prayers for relief, including its request for treble damages under the Lanham Act and Va. Code Ann. § 18.2-500, and its request for statutory damages and attorneys' fees under the Copyright Act, should be stricken.

Because the Lanham Act claim will remain in this lawsuit, plaintiff's prayer for relief under that statute, including treble damages, still stands.

Cvent is also seeking both statutory damages and attorneys' fees in connection with its Copyright Act claim. Eventbrite moves to strike that prayer for relief on the ground that 17 U.S.C. § 412 bars any award of statutory damages or attorneys' fees if the work at issue was not registered at the time the infringement commenced. In this case, all copyrighted content on the www.cvent.com website, including Cvent's CSN venue location database, was registered in late April 2010, immediately before plaintiff commenced this litigation. However, plaintiff's first amended complaint alleges only that the defendant committed unlawful "scraping" of its website between August 2008 and October 2008. Eventbrite therefore correctly argues that on the allegations in the first amended complaint alone, plaintiff may only recover compensatory damages, not statutory damages or attorney's fees, for its copyright claims based on Eventbrite's alleged pre-registration infringement.

For these reasons, Eventbrite's motion to strike plaintiff's requested relief will be granted in part and denied in part. The motion will be granted in part as to statutory damages or attorney's fees claimed under the Copyright Act claim (Count One), and any other relief claimed with respect to Counts Two, Three, Five, Seven, and Eight. Defendant's motion to strike the remainder of plaintiff's prayer for relief, including the prayer

25

for treble damages and attorneys' fees under the Lanham Act
(Count Four) and equitable relief under the unjust enrichment
claim (Count Six), will be denied.

## IV. Conclusion

For the reasons stated in open court and in this Memorandum
Opinion, Eventbrite's motion to dismiss will be granted as to
Counts Two, Three, Five, Seven, and Eight, and denied as to
Counts Four and Six. Defendant's motion to strike portions of
plaintiff's prayer for relief will be granted in part and denied
in part, as described above.

Entered this _14_th day of September, 2010.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge